PROSKAUER ROSE LLP
HAROLD M. BRODY (Cal. Bar No. 84927)
hbrody@proskauer.com
PIETRO A. DESERIO (Cal. Bar No. 309230)
pdeserio@proskauer.com
TRACEY L. SILVER (Cal. Bar No. 287745)
tsilver@prosakuer.com
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Telephone:   (310) 557-2900
Facsimile:   (310) 557-2193

Attorneys for Defendant,
SPRINT/UNITED MANAGEMENT COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONOVAN SEBASTIAN, individually, on a representative basis, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>SPRINT/UNITED MANAGEMENT COMPANY, a Kansas Corporation, and DOES 1 through 20, inclusive;<br><br>        Defendants. | Case No. _____<br><br>(Orange County Case No. 30-2018-00982220-CU-OE-CXC)<br><br>**CLASS ACTION**<br><br>**DEFENDANT SPRINT/UNITED MANAGEMENT COMPANY'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**<br><br>[28 U.S.C. §§ 1332, 1453]<br><br>Compl. Filed: March 26, 2018 |

---

**SPRINT'S NOTICE OF REMOVAL OF CIVIL ACTION**

TO THE CLERK OF THE ABOVE-ENTITLED COURT

PLEASE TAKE NOTICE that Defendant Sprint/United Management Company ("Sprint" or "Defendant"), by and through its undersigned counsel, hereby effects removal of the above-referenced action from the California Superior Court for the County of Orange to the United States District Court for the Central District of California. Removal of this action is brought pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711–15, which gives this Court original jurisdiction over any civil class action in which "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). Specifically, removal of this action is made on the following grounds:

**BACKGROUND**

1.      On March 26, 2018, Plaintiff Donovan Sebastian ("Plaintiff") filed a Complaint against Sprint in the California Superior Court for the County of Orange on behalf of himself and a putative class defined to include (i) "[a]ll current and former indirect account executives of Defendants that were classified as exempt at any time during the Relevant Time Period;" and (ii) "[a]ll current and former employees of Defendants who were subjected to deductions from earned wages for the use of "fleet vehicles" at any time during the Relevant Time Period." *See* Compl. ¶ 25. The Relevant Time Period" is defined as "the time period beginning four years prior to the filing of this action until judgment is entered."

2.      In the Complaint, Plaintiff alleges causes of action (1) failure to pay regular and minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to provide rest breaks; (5) failure to reimburse business expenses; (6) failure to timely pay final wages; (7) failure to provide accurate itemized wage statements; and (8) for "unfair competition" under California Business & Professions Code section 17200. Plaintiff also alleges claims under the California Private Attorney General Act ("PAGA") for (1) failure to pay regular and minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to provide rest breaks; (5) failure to reimburse business expenses; (6) unlawful deduction of wages; (7) failure to timely pay wages; and (8) failure to provide accurate itemized wage statements. A true and correct

copy of Plaintiff's Complaint is attached as **Exhibit "2"** to this Notice of Removal.[1]

3.      On March 30, 2018, Plaintiff served Sprint with a Summons and a copy of the Complaint. *See* Decl. of Harold M. Brody in Supp. of Notice of Removal ("Brody Decl.") ¶ 2.

4.      On April 27, 2018, Sprint filed an Answer to Plaintiff's Complaint in the California Superior Court for the County of Orange, a true and correct copy of which is attached as **Exhibit "3"** to this Notice of Removal.

<u>COPIES OF ALL PROCESS, PLEADINGS, AND ORDERS SERVED</u>

5.      "A defendant . . . desiring to remove any civil action from a State court" must provide "the district court of the United States for the district and division within which such action is pending a notice" with "a copy of all process, pleadings, and orders served upon such defendant . . . in such action." 28 U.S.C. § 1446(a). In compliance with 28 U.S.C. § 1446(a), Sprint hereby provides the Court with copies of all "process, pleadings, and orders" served upon Sprint in this action by attaching **Exhibit A** to the Declaration of Harold M. Brody filed concurrently herewith.

6.      In addition to all process, pleadings, and orders served upon Sprint in this action, Sprint hereby provides the Court with copies all of process, pleadings, and orders filed in this action by attaching **Exhibits "2" and "3"** to this Notice of Removal.

<u>TIMELINESS OF REMOVAL</u>

7.      A Notice of Removal is timely if filed within 30 days of the date on which a plaintiff serves the defendant with a copy of the "pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). In other words, a defendant "must be 'notified of the action, and brought under a court's authority, by formal process,' before the removal period begins to run." *Quality Loan Serv. Corp. v. 24702 Pallas Way, Mission Viejo, CA 92691*, 635 F.3d 1128, 1133 (9th Cir. 2011) (quoting *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999)).

8.      Plaintiff served Sprint with a Summons and copy of the Complaint on March 30, 2018. Brody Decl. ¶ 3. Thirty days from March 30, 2018 is May 1, 2018. This Notice of Removal is being filed prior to the end of May 1, 2018, and is therefore timely under 28 U.S.C. § 1446(b).

---

[1] The Civil Cover Sheet is **Exhibit "1"** to this Notice of Removal.

**SPRINT'S NOTICE OF REMOVAL OF CIVIL ACTION**

**NOTICE TO ADVERSE PARTY AND STATE COURT**

9.      In accordance with 28 U.S.C. § 1446(d), Sprint will promptly provide notice of this removal to Plaintiff and to the Clerk of the California Superior Court for the County of Orange. *See* Brody Decl. ¶ 6. True and correct copies of the "Notice to Adverse Party of Removal of Civil Action to the United States District Court for the Central District of California" and the "Notice to the Clerk of the Orange County Superior Court of Removal of Civil Action to the United States District Court for the Central District of California" that Sprint will promptly file and serve after effecting this removal are attached as **Exhibit B** and **Exhibit C**, respectively, to the Declaration of Harold M. Brody filed concurrently with this Notice of Removal.

**VENUE**

10.      Venue lies in this Court because the Central District of California is the "district and division embracing the place where such action is pending," namely: the California Superior Court for the County of Orange. *See* 28 U.S.C. §§ 84(a), 1441(a), 1446(a).

**JURISDICTION**

11.      "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

12.      Plaintiff's Complaint asserts putative class claims against Sprint for alleged violations of California's wage and hour laws, *see, e.g.*, Compl. ¶¶ 23-35, including a derivative cause of action under California Business & Professions Code section 17200 (the "Unfair Competition Law" or the "UCL").

13.      As set forth below, Plaintiff's class claims are removable to this Court under 28 U.S.C. § 1441 pursuant to CAFA because this case is a civil action in which the "matter in controversy" exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C. § 1332(d)(2)(A).

## I.   The Court Has Original Jurisdiction over Plaintiff's Class Action Claims

14.   Plaintiff's Complaint alleges that Sprint violated California Labor Code and, based thereon, seeks to recover, on behalf of himself and a putative class of (i) "[a]ll current and former indirect account executives of Defendants that were classified as exempt at any time during the Relevant Time Period;" and (ii) "[a]ll current and former employees of Defendants who were subjected to deductions from earned wages for the use of "fleet vehicles" at any time during the Relevant Time Period." *See* Compl. ¶ 25, recovery of unpaid wages, penalties for allegedly non-compliant wage statements under California Labor Code section 226(e), waiting time penalties under California Labor Code section 203 for an alleged failure to timely pay all wages owed upon separation of employment, failure to reimburse business expenses; and PAGA penalties associates with the same violations. *See* Compl. ¶¶ 34-191.

15.   Under CAFA, this Court has original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A), provided that "the number of members of all proposed plaintiff classes in the aggregate" is not less than 100. 28 U.S.C. § 1332(d)(5)(B). Based on a review of its records, Sprint is informed that there are *at least* approximately 400 putative class members. *See* Declaration of Valerie Boyice in Support of Notice of Removal ("Boyice Decl.") ¶ 6. This Court therefore has original jurisdiction over this matter under CAFA because, as set forth below, it is a civil class action in which there is the requisite level of diversity and the "matter in controversy" exceeds the sum or value of $5,000,000.

### A.   The "Minimal Diversity" Required by CAFA Exists

16.   "Under CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) (citing *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005), and *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 680–82 (9th Cir. 2006)). The "minimal diversity" required for this Court to exercise jurisdiction over Plaintiff's class claims under CAFA exists if "*any* member of a *class of plaintiffs* is a citizen of a State different from *any* defendant." 28 U.S.C. § 1332(d)(2)(A) (emphasis added). This requirement is easily

1    satisfied here.

2              **(i)    Plaintiff is a Citizen of California**

3         17.    "To be a citizen of a state, a natural person must first be a citizen of the United

4    States." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Newman–Green,*

5    *Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 828 (2001)). Based on information Plaintiff provided to

6    Sprint during his employment with Sprint, Sprint is informed that Plaintiff is a citizens of the United

7    States. *See* Boyice Decl. ¶ 5.

8         18.    A natural person's state citizenship is determined by his or her state of "domicile."

9    *Kanter*, 265 F.3d at 857. "A person's domicile is her permanent home, where she resides with the

10   intention to remain or to which she intends to return." *Id.* (citing *Lew v. Moss*, 797 F.2d 747, 749

11   (9th Cir. 1986)). "[T]he determination of an individual's domicile involves a number of factors (no

12   single factor controlling), including: current residence, voting registration and voting practices,

13   location of personal and real property, location of brokerage and bank accounts, location of spouse

14   and family, membership in unions and other organizations, place of employment or business,

15   driver's license and automobile registration, and payment of taxes." *Lew*, 797 F.2d at 750. "[T]he

16   existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed." *Id.*

17   A party's "place of residence" is *prima facie* evidence of domicile. *State Farm Mut. Auto. Ins. Co. v.*

18   *Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

19        19.    From March 3, 2014 to December 12, 2017, Sprint employed Plaintiff Donovan

20   Sebastian. *See* Boyice Decl. ¶ 4. Throughout his employment with Sprint, Sprint understood

21   Sebastian to reside in San Bernardino County, California. *Id.* ¶ 5. Therefore, Plaintiff is a citizen of

22   California.

23        20.    In addition, the class of persons whom Plaintiff seeks to represent in regards to his

24   California state law claims includes (i) "[a]ll current and former indirect account executives of

25   Defendants that were classified as exempt at any time during the Relevant Time Period;" and (ii)

26   "[a]ll current and former employees of Defendants who were subjected to deductions from earned wages

27   for the use of "fleet vehicles" at any time during the Relevant Time Period." *See* Compl. ¶ 25. As a

28   result, the class that Plaintiff seeks to represent includes Sprint's *current* indirect account executives

in California, the overwhelming majority of whom live and work in California. *See* Boyce Decl. ¶ 10. Thus, even if Plaintiff was not a California citizen, at least one member of the "class of plaintiffs," *is* a California citizen. *See  Bustamante v. J.P. Morgan Chase N.A.*, No. 13-CV-1123-LAB DHB, 2014 WL 869064, at *1 n.2 (S.D. Cal. Mar. 5, 2014) ("The pleadings allege facts showing the [plaintiffs] are California citizens because they live and work in California.").

**(ii)**  <u>**Sprint is a Citizen of Kansas**</u>

21.     For the purpose of determining jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's "principal place of business" is its "nerve center," which means "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010). Typically, a corporation's "nerve center" is the location where the corporation maintains its headquarters. *Id.* at 81, 92.

22.     Sprint is, and was at the time of filing of this action, incorporated under the laws of the State of Kansas. *See* Boyce Decl. ¶ 2.

23.     Sprint's headquarters are, and were at all times relevant to this Notice of Removal, located at 6200 Sprint Parkway in Overland Park, Kansas. *See* Boyce Decl. ¶ 3. Sprint's Overland Park headquarters are the actual center of direction, control, and coordination for the business functions central to Sprint's operations. *Id.* The corporate personnel in charge of the major human resources, payroll and legal functions and the development of policies and protocols for Sprint's operations work at Sprint's Overland Park headquarters, including, but not limited to, Sprint's Chief Executive Officer, Chief Financial Officer, Senior Vice President of Human Resources, and General Counsel. *Id.* Thus, Sprint's principal place of business is Overland Park, Kansas.

24.     Because Sprint is a Kansas corporation with its principal place of business in Overland Park, Kansas, Sprint is a citizen of Kansas and, more important for this Notice of Removal, *not* a citizen of California.

25.     Because Sprint is a citizen of Kansas and at least one member of the "class of plaintiffs," including, but not limited to Plaintiff, is a citizen of California, the minimal diversity

- 6 -

**SPRINT'S NOTICE OF REMOVAL OF CIVIL ACTION**

1    required for this Court to exercise jurisdiction under CAFA is satisfied. *See* 28 U.S.C. §

2    1332(d)(2)(A).

3    **B.    The Matter in Controversy "More Likely than Not" Exceeds $5,000,000**

4          26.    When removal is sought on the basis of a federal court's jurisdiction under CAFA,

5    removal jurisdiction requires the "matter in controversy" to "exceed[ ] the sum or value of

6    $5,000,000." 28 U.S.C. § 1332(d)(2) "In determining the amount in controversy, courts first look to

7    the complaint." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). This Court can

8    consider whether the sum resulting from "adding up the value of the claim of each person who falls

9    within the definition of [the plaintiff's] proposed class . . . exceeds $5 million." *Standard Fire Co. v.*

10   *Knowles*, 133 S. Ct. 1345, 1348 (2013); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d

11   975, 981 (9th Cir. 2013) ("*Standard Fire* mandates that courts determine their jurisdiction by

12   aggregating all potential class members' individual claims.").

13         27.    The amount in controversy is assessed as of the date of the removal petition. *See*

14   *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam). When,

15   as here, the operative complaint does not plead a specific amount of damages or understates the

16   damages, "the removing defendant must prove by a preponderance of the evidence that the amount

17   in controversy requirement has been met." *Abrego*, 443 F.3d at 683–86 (holding that CAFA does not

18   alter the traditional burdens of establishing removal jurisdiction); *see also Ibarra*, 775 F.3d at 1197

19   ("Whether damages are unstated in a complaint, or, in the defendant's view are understated, the

20   defendant seeking removal bears the burden to show by a preponderance of the evidence that the

21   aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged."). In

22   doing so, the Court and the defendant seeking removal "must assume that the allegations of the

23   complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the

24   complaint." *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) (quoting *Kenneth*

25   *Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

26         28.    In this case, the minimum amount in controversy required to invoke jurisdiction in

27   CAFA is easily met. In fact, as shown below, even a partial (and therefore underinclusive) analysis of

28   only *five* of Plaintiff's claims—Plaintiff's claims for waiting time penalties under California Labor

**SPRINT'S NOTICE OF REMOVAL OF CIVIL ACTION**

Code section 203, penalties for allegedly non-compliant wage statements under California Labor Code section 226(e), missed rest break premiums, unpaid overtime, and PAGA penalties—establishes, by a preponderance of the evidence, that Plaintiff's Complaint places **more than $5,069,498** *"in controversy."* When combined with Plaintiff's claim for attorneys' fees, and Plaintiff's remaining claims (e.g. expense reimbursement) it is certainly "more likely than not" that the $5 million threshold established by CAFA is met.

### (i)   Waiting Time Penalties

29.     In the Complaint, Plaintiff claims that he and (i) all "indirect account executives of Defendants that were classified as exempt at any time during the Relevant Time Period" and (ii) "[a]ll current and former employees of Defendants who were subjected to deductions from earned wages for the use of 'fleet vehicles' at any time during the Relevant Time Period" that have since separated from Sprint are entitled to waiting time penalties under California Labor Code section 203 due to Sprint's alleged failure to timely pay its former employees all earned and unpaid wages within the time required by California Labor Code sections 201 and 202. *See* Compl. ¶¶ 96-102.

30.     Under California Labor Code section 201, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a). Under California Labor Code section 202, "if an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting." Cal. Lab. Code § 202. If an employer "willfully" fails to pay a separating employee his or her final wages within the time required by California Labor Code section 201 or 202, California Labor Code section 203 states that the employee's wages "shall continue as a penalty . . . at the same rate" for each day that the employee's final wages remain "willfully" unpaid, up to a maximum of 30 days. *See* Cal. Lab. Code § 203(a).

31.     Claims for waiting time penalties are subject to a three-year statute of limitations. *See* Cal. Lab. Code § 203(b); Cal. Civ. Proc. Code § 338(a). A review of Sprint's records for the relevant period shows that about 26 individuals *formerly* worked for Sprint as indirect account executives and

**SPRINT'S NOTICE OF REMOVAL OF CIVIL ACTION**

114 individuals *formerly* worked for Sprint and potentially had their wages deducted for personal use of a Fleet Vehicle during the Relevant Time Period, totaling 140. *See* Boyice Decl. ¶ 6. Sprint's business records for these employees indicate that the average straight-time hourly rate of pay for the 114 putative class members who used Fleet Vehicles was approximately $35.60. *Id.* ¶ 6. Records indicate that the average straight-time hourly rate of pay for the 26 putative indirect account executive class members was approximately $22. *Id*. Analyzing the claim for failure to timely pay final wages for the 140 former employees previously identified places approximately **$1,111,296** "in controversy" ($974,016 [$35.60 per hour x 8 hours x 30 days x 114 putative subclass members] using the average straight time pay rate for these 114 putative class members] plus  $137,280 [$22 per hour x 8 hours x 30 days x 26 putative subclass members) using the average straight time pay rate for these 26 putative class members]).

### (ii)    <u>Inaccurate Wage Statement Penalties</u>

32.    In the Complaint, Plaintiff claims that he and (i) all "indirect account executives of Defendants that were classified as exempt at any time during the Relevant Time Period" and (ii) "[a]ll current and former employees of Defendants who were subjected to deductions from earned wages for the use of 'fleet vehicles' at any time during the Relevant Time Period" are entitled to penalties under California Labor Code section 226 due to Sprint's alleged failure to furnish accurate wage statements. *See* Compl. ¶¶ 103-110.

33.    California Labor Code section 226 requires employers to provide employees with an accurate itemized wage statement. *See* Cal. Lab. Code § 226(a). Under section 226, "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period. *See* Cal. Lab. Code § 226(e)(1).

34.    Claims for inaccurate wage statement penalties are subject to a one-year statute of limitations. *See* Cal. Civ. Proc. Code § 340. A review of Sprint's records for the relevant period (March 26, 2017 to present) shows that approximately 273 employees received wage statements throughout that entire time period.  *See* Boyice Decl. ¶ 7. The one-year statute of limitations for

section 226 penalties for this putative class means the potential liability period extends from March 26, 2017, to the present. Sprint issues wage statements on a bi-weekly basis. *See* Boyice Decl. ¶ 8. So the potential exposure extends across approximately 28 pay periods (i.e. 28 wage statements) for putative class members employed during that entire time period. Sprint's business records indicate that approximately 273 putative class members were employed by Sprint for the duration of the time period from March 26, 2017 through the present. *Id.* ¶ 9. In the Complaint, Plaintiff alleges that as a matter of uniform policy and practice, Sprint failed to furnish Plaintiff and the other putative class members with accurate and complete itemized wage statements that included, among other requirements, all wages earned, in violation of Labor Code § 226 and that Sprint's alleged failure to furnish accurate wage statements resulted in actual injury. Compl. ¶¶ 103-110. Analyzing these allegations for only the 273 employees previously identified, places approximately **$750,750** "in controversy" (($50 x 1 inaccurate wage statement) + ($100 x 27 inaccurate wage statements) = $2,750; 273 putative subclass members x $2,750 = $750,750).

### (iii) Rest Break Premiums

35.     In the Complaint, Plaintiff claims that he and all "indirect account executives of Defendants that were classified as exempt at any time during the Relevant Time Period" are entitled to "one additional hour of pay at [their] regular rate of compensation" for each workday that they are not provided a rest period as required under California law. *See* Compl. ¶¶ 76-85. Although colloquially referred to as a penalty, the "one additional hour of pay" is considered a "premium wage." See *Murphy v. Kenneth Cole Prods., Inc*., 40 Cal. 4th 1094, 1114 (2007). As a result, claims for missed rest periods are subject to a three-year statute of limitations. *See* Cal. Civ. Proc. Code § 338(a). Since Plaintiff has also alleged a cause of action under the UCL, however, the putative class may recover rest period premiums as "restitution" dating back to four years prior to the filing of the Complaint. *See* Cal. Bus. & Prof. Code § 17208.

36.     A review of Sprint's records for the relevant period shows that approximately 31 indirect account executives were employed for the duration of the time period beginning March 26, 2014 through the present, and 22 indirect account executives were employed for the duration of the time period beginning March 26, 2016 through the present. *See* Boyice Decl. ¶ 9. The period of

**SPRINT'S NOTICE OF REMOVAL OF CIVIL ACTION**

potential liability extends from March 26, 2014 to the present. That period of time covers

approximately 213 workweeks. ¶ 8. So the potential exposure extends across approximately 213

workweeks for each of the 31 putative class members employed during that entire time period, and

for at least 109 workweeks for each of the putative class members employed since at least March 26,

2016. In the Complaint, Plaintiff alleges that as a matter of uniform policy and practice, Sprint failed

to provide Plaintiff and the putative class members with all mandatory rest breaks and failed to pay

one additional hour of compensation in lieu thereof. Compl. ¶¶ 103-110. Sprint's business records

for these employees indicate that the average straight-time hourly rate of pay for these 53 putative

class members was approximately $22.89. *Id.* ¶ Analyzing these allegations for only the 31 and 22

employees previously identified places approximately **$1,033,164** "in controversy" ($755,713

[$22.89 per rest break premium x 5 days x 213 weeks x 31 putative class members], plus $277,451

[$22.89 per rest break premium x 5 days x 109 weeks x 22 putative class members]; assuming one

missed rest break per day).

### (iv)   Unpaid Overtime

37.    In the Complaint, Plaintiff claims that he and all "indirect account executives of

Defendants that were classified as exempt at any time during the Relevant Time Period" are entitled

to "recovery of all unpaid overtime wages, penalties, interest, attorneys' fees and costs of suit,

pursuant to Labor Code § 1194." *See* Compl. ¶¶ 49-63. Claims for unpaid overtime are subject to a

three-year statute of limitations. *See* Cal. Civ. Proc. Code § 338(a). Since Plaintiff has also alleged a

cause of action under the UCL, however, the putative class may recover unpaid overtime as

"restitution" dating back to four years prior to the filing of the Complaint. *See* Cal. Bus. & Prof.

Code § 17208.

38.    A review of Sprint's records for the relevant period shows that approximately 31

indirect account executives were employed for the duration of the time period beginning March 26,

2014 through the present and 22 indirect account executives were employed for the duration of the

time period beginning March 26, 2016 through the present. *See* Boyce Decl. ¶ 9. The period of

potential liability, therefore, extends from March 26, 2014 to the present. That period of time covers

approximately 213 workweeks. ¶ 8. So the potential exposure extends across approximately 213

**SPRINT'S NOTICE OF REMOVAL OF CIVIL ACTION**

workweeks for each of the putative class members employed during that entire time period and for at least 109 workweeks for each of the putative class members employed since at least March 26, 2016. In the Complaint, Plaintiff alleges that as a matter of uniform policy and practice, Sprint failed to provide Plaintiff and the putative class members with overtime pay. Compl. ¶¶ 49-63. Analyzing these allegations for only the 31 and 22 employees previously identified places approximately **$618,188** "in controversy." With an average regular rate of pay of $22.89 per hour, the 53 putative class members have an average overtime rate of $34.34 ($22.89 x 1.5). If the 53 putative class members had an average of 2 hours unpaid overtime from each workweek, Sprint's estimated liability would be **$618,188** ($453,494 [$34.34/hour OT pay x 2 OT hours x 213 workweeks x 31 putative class members] plus $164,694 [$34.34/hour OT pay x 2 OT hours x 109 workweeks x 22 putative class members]).

(i)   **PAGA Penalties**

39.   In the Complaint, Plaintiff claims that he and (i) all "indirect account executives of Defendants that were classified as exempt at any time during the Relevant Time Period" and (ii) "[a]ll current and former employees of Defendants who were subjected to deductions from earned wages for the use of 'fleet vehicles' at any time during the Relevant Time Period" are entitled to "all applicable and available PAGA remedies pursuant to Labor Code § 2699." *See* Compl. ¶¶ 124-189. PAGA provides each aggrieved employee $100 per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation. See Labor Code § 2699(f)(2). Claims for PAGA penalties are subject to a one-year statute of limitations. *See* Cal. Civ. Proc. Code § 340. PAGA penalties can be included for purposes of determining the "amount in controversy" for CAFA removal. *See, e.g., Stafford v. Brinks Inc*., Case No. CV–14–1352–MWF, 2014 WL 10320456 (C.D. Cal. May 28, 2014) (holding that "PAGA claims are 'claims of individual class members' subject to aggregation under CAFA").

40.   A review of Sprint's records for the relevant period (March 26, 2017 to present) shows that approximately 273 employees received wage statements throughout that entire time period.  *See* Boyice Decl. ¶ 7. The one-year statute of limitations for section 2699 penalties for this putative class means the potential liability period extends from March 26, 2017, to the present.

**SPRINT'S NOTICE OF REMOVAL OF CIVIL ACTION**

1   Sprint issues wage statements on a bi-weekly basis. *See* Boyce Decl. ¶ 8. So the potential exposure

2   extends across approximately 28 pay periods for putative class members employed during that entire

3   time period. Sprint's business records indicate that approximately 273  putative class members were

4   employed by Sprint for the duration of the time period from March 26, 2017 through the present. *Id.*

5   ¶ 9. In the Complaint, Plaintiff alleges that as a matter of uniform policy and practice, Sprint's labor

6   code violations subject it to PAGA penalties for the 28 pay periods at issue. Compl. ¶¶ 124-189.

7   Analyzing these allegations for only the 273 employees previously identified, places approximately

8   **$1,556,100**  "in controversy" (($100 x 1 pay period for first violation) + ($200 x 28 pay periods for

9   subsequent violations) = $5,700; 273 putative subclass members x $5,700 = $1,556,100).

10                         **(ii)**    **Attorneys' Fees**

11          41.    In addition to waiting time and inaccurate wage statement penalties, Plaintiff also

12   seeks an award of "reasonable attorneys' fees." *See* Compl., Prayer for Relief ¶ 7. If Plaintiff's

13   "seventh cause of action" for violations of California Labor Code section 226(a) succeeds—which

14   this Court must assume for purposes of determining removal jurisdiction—Plaintiff will be "entitled

15   to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e)(1). Under California

16   Code of Civil Procedure section 1021.5, this Court also has discretion to award Plaintiff's attorneys'

17   fees if he succeeds in his claim for unpaid wages under California Business & Professions Code

18   section 17200 or for waiting time penalties under California Labor Code section 203 if it finds that

19   Plaintiff's action resulted in the "enforcement of an important right affecting the public interest."

20   Cal. Civ. Proc. Code § 1021.5; *see also Perez v. Safety-Kleen Sys., Inc.*, No. C 05-5338 P JH, 2010

21   WL 934100, at *7 (N.D. Cal. Mar. 15, 2010) (awarding attorneys' fees under California Code of

22   Civil Procedure section 1021.5 for claims for failure to pay waiting time penalties and for violation

23   of California's unfair competition law), *aff'd*, 448 F. App'x 707 (9th Cir. 2011).

24          42.    Where a state statute provides for attorneys' fees to be awarded to a successful

25   litigant, the amount claimed thereunder may be taken into account in determining whether the

26   jurisdictional minimum has been reached. *See, e.g., Galt G/S v. JSS Scandinavia*, 142 F.3d 1150,

27   1155–56 (9th Cir. 1998) (holding that "where an underlying statute authorizes an award of attorney's

28   fees, either with mandatory or discretionary language, such fees may be included in the amount in

**SPRINT'S NOTICE OF REMOVAL OF CIVIL ACTION**

controversy"). In the Ninth Circuit, "a 25 percent award is the 'benchmark' amount of attorneys' fees" in class actions. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015); *see also Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a "benchmark" for attorneys' fees calculations under the percentage-of-recovery approach."). As established above, Plaintiff alleges claims with an amount in controversy *that exceeds* **$5,069,498.** Consequently, it is reasonable to expect that Plaintiff will seek attorneys' fees in excess of **$1,267,374** if he prevails in this action**.** In light of this, the jurisdictional minimum is clearly satisfied by a preponderance of the evidence that ***more than* $6,336,872** *is in controversy* when assuming that only four of Plaintiff's class action claims will succeed.

43.     In sum, because, based on the above, it "is more likely than not" that "the amount in controversy requirement has been met," *Abrego*, 443 F.3d at 683 (articulating the burden of proof for removal), and, in fact, is greatly in excess of the $5,000,000 threshold set by CAFA. Insofar as Plaintiff disputes Sprint's calculations, the Court should bear in mind that"[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448–49 (7th Cir. 2005) (citations omitted). "This standard applies to removed cases no less than to those initially filed in federal court." *Id.* at 449.

## CONCLUSION

44.     "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Because Plaintiff's case is pending in in the Orange County Superior Court and is a civil class action where: (i) there are more than 100 putative class members; (ii) at least one member of the class of plaintiffs is a citizen of a State different than Sprint; and (iii) the amount in controversy exceeds the sum of $5,000,000, Plaintiff's case is removable to this Court. *See* 28 U.S.C. §§ 84(c) (stating that Orange County is in the Central District of California), 1332(d) (establishing original jurisdictional over Plaintiff's class action claims); and 1441(a) (establishing right to remove).

**SPRINT'S NOTICE OF REMOVAL OF CIVIL ACTION**

45.    In the event this Court should have any questions about the propriety of removal or may be inclined to remand this action, Sprint respectfully requests that the Court issue an order to show cause why the case should not be remanded and afford the parties an opportunity to provide the Court with full briefing and argument.

**WHEREFORE**, Sprint hereby provides notice that the case captioned as *Sebastian v. Sprint/United Management Company* and designated as case number 30-2018-00982220-CU-OE-CXC in the California Superior Court for the County of Orange has been removed to the United States District Court for the Central District of California for all further proceedings.

Dated: May 1, 2018

PROSKAUER ROSE LLP
Harold M. Brody
Pietro A. Deserio
Elaine H. Lee

By: _____ */s/ Harold M. Brody*
                     Harold M. Brody

Attorneys for Defendant
SPRINT/UNITED MANAGEMENT COMPANY

**SPRINT'S NOTICE OF REMOVAL OF CIVIL ACTION**

97844906v1